IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **EARTH PRIDE ORGANICS, LLC, et al.**<br><br>v.<br><br>**OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF EARTH PRIDE ORGANICS, LLC** | CIVIL ACTION<br><br>NO. 20-4032<br><br>BANKRUPTCY NO. 17-13816 |

### MEMORANDUM RE APPEAL

**Baylson, J.**                                                                                                    **April 20, 2021**

The parties involved here have been engaged in litigation for many years. In a prior case, after a lengthy jury trial, Dalmatia Import Group, Inc. ("Dalmatia") won a significant judgment against EarthPride Organics, LLC ("EarthPride") and Lancaster Fine Foods, Inc. ("Lancaster"), leading to their bankruptcy. That case resulted in a settlement agreement between the parties, the interpretation of which is a key issue in this case. The Bankruptcy Court found that the settlement agreement did not bar Dalmatia's objection to the bankruptcy plan, and that Dalmatia was unfairly discriminated against in the plan. For the following reasons, this Court will affirm.

**I.      Facts and Procedural History**

        **a.  Parties Involved**

There are several entities and individuals involved in this litigation and the underlying events. Dalmatia is the developer and owner of a fig spread recipe. Ms. Maia Magee is a co-owner of Dalmatia. Lancaster is a food manufacturer. EarthPride is Lancaster's parent company. C.O. Nolt is another company associated with Lancaster and EarthPride. Mr. Michael S. Thompson is EarthPride and Lancaster's CEO. Foodmatch, Inc. is a food distributor, which distributed the Dalmatia fig spread.

1

Until the events leading to this litigation, these parties worked together as follows: Lancaster manufactured Dalmatia's fig spread according to Dalmatia's recipe, and then sold it to Dalmatia. Dalmatia then sold the spread to Foodmatch which distributed it to grocery stores throughout the country.

### b. The Underlying Litigation

The arrangement described above continued until the fall of 2015, when Dalmatia rejected a shipment of fig spread from Lancaster, claiming that it did not meet Dalmatia's quality standards. Dalmatia then directed Lancaster to cease production of its fig spread, and informed Foodmatch that it was switching to a new manufacturer. Foodmatch and Lancaster both believed that Dalmatia's actions breached their agreements and continued to produce and distribute Dalmatia's fig spread, in Dalmatia-branded packaging, without Dalmatia's permission. After filling the remaining orders of Dalmatia's product, Foodmatch and Lancaster agreed to work together to develop a different fig spread, under Foodmatch's product line.

In March 2016, Dalmatia and Ms. Magee filed a lawsuit against Lancaster, EarthPride, Mr. Thompson, C.O. Nolt, and Foodmatch, asserting claims of misappropriation of trade secrets, trademark infringement, trademark counterfeiting, breach of contract, and conversion. See Dalmatia Import Group, Inc. v. FoodMatch, Inc., No. 16-2767 (E.D. Pa.) (Smith, J.). A jury trial in February 2017 resulted in a verdict and significant judgment mostly in favor of Dalmatia and Ms. Magee.

### c. Post-Trial Proceedings and Settlement Agreement

On May 31, 2017, Lancaster and EarthPride ("the Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Pennsylvania. At the time, Dalmatia's case against the Debtors was in the post-

trial motions phase, and pursuant to 11 U.S.C. § 362, the post-trial motions were automatically stayed. On July 31, 2017, the Bankruptcy Court lifted the stay to allow Dalmatia to proceed on several of its post-trial motions.

On October 11, 2017, the parties were scheduled to participate in a hearing on the post-trial motions. Instead, Judge Smith conducted an impromptu settlement conference which resulted in an agreement, originally memorialized in a document handwritten by Judge Smith, which was later typed and submitted to the Court by the parties. The relevant portions of the settlement agreement are as follows:

- Dalmatia's claim against the Debtors was fixed in the amount of $1,758,871;
- Dalmatia received judgments against Mr. Thompson and C.O. Nolt;
- For one year, the Debtors were enjoined from producing "any fig product," with the exception that they were allowed to produce a product for one customer who Lancaster claimed did not compete with Dalmatia;
- For five years, the Debtors were prohibited from selling a fig spread containing similar ingredients or using a similar formulation as Dalmatia's;
- Dalmatia would have the right to inspect the Debtors' facility in order to verify their compliance with the above conditions;
- Dalmatia would be able to pursue its claim in Bankruptcy Court but agreed to support "any plan not inconsistent" with the settlement agreement, "as long as it pays out at least 10%"; and
- The Debtors had the option to pay Dalmatia $700,000 to terminate the injunctions described above, vacate the judgments against C.O. Nolt and Mr. Thompson, and obtain an assignment of the Dalmatia claim against the Debtors.

3

On the Debtors' motion, the settlement agreement was approved by the Bankruptcy Court on March 2, 2018.

### d. The Plan of Reorganization in the Bankruptcy Court

On November 20, 2017, the Debtors filed their initial plan of reorganization which proposed to pay all unsecured creditors, including Dalmatia, fifteen percent of their claims over a period of five years. (ECF 13, APP 195.) The Debtors filed first, second, and third amended plans of reorganization throughout spring 2018, after the settlement agreement was approved, each of which included the same treatment of the unsecured creditors as in the original plan. (ECF 13, APP 314, 342, 478.)

The Debtors and unsecured creditors committee filed a proposed fourth amended joint plan of reorganization on June 6, 2018 ("the Plan"). (ECF 13, APP 615.) In this plan, the unsecured creditors were divided into three groups. Dalmatia was placed into its own class, Class 5, and would receive ten percent of its allowed claim with disbursements over a four-and-a-half-year period. Classes 8 and 9 consisted of all allowed unsecured claims not otherwise classified.[1] These creditors would receive fifteen percent of their allowed claims in years one through five, as well as payments of eight percent in years six through eight, for a total of 39 percent. Additionally, creditors in Classes 8 and 9 were entitled to certain savings the Debtors accrued up to a maximum payout of 50 percent of their allowed claims.

Dalmatia filed an objection to the Plan on July 26, 2018, arguing that the Plan unfairly discriminated against it by classifying it separately from the other unsecured creditors. The Bankruptcy Court confirmed the Plan but reserved Dalmatia's right to challenge its status and to be heard at a later hearing. The parties agreed that if Dalmatia's objection were sustained, the

---

[1] The difference between Class 8 and Class 9 is only which debtor was obligated to the creditors.

4

remedy would not be denial of the confirmation, but that Dalmatia would receive the same treatment as the unsecured creditors in Classes 8 and 9 of the Plan.

The Bankruptcy Court held an evidentiary hearing on Dalmatia's objection on December 21, 2018. The Bankruptcy Court heard testimony from Ms. Magee, Mr. Thompson, and Harvey Grossman who is Dalmatia's sales manager. The only documentary evidenced submitted to the Bankruptcy Court was the settlement agreement between the Debtors and Dalmatia.

## II.     The Bankruptcy Court's Decision

On July 31, 2020, Judge Eric Frank of the United States Bankruptcy Court for the Eastern District of Pennsylvania set forth his decision in a bench opinion and found that the Plan unfairly discriminated against Dalmatia.

First, Judge Frank addressed whether Dalmatia's objection to the Plan constituted a breach of the settlement agreement and found that it did not. In doing so, Judge Frank held that the settlement agreement was only a partially integrated contract and therefore, parol evidence could be considered. Judge Frank based this holding on the fact that there was no integration clause, the settlement agreement was initially handwritten, and the negotiations were impromptu and informal. Then Judge Frank found that Dalmatia could object to the Plan on two alternative grounds:

> First, that there was no evidence in the record that Dalmatia waived its right to equitable treatment, and, second, that under the doctrine of necessary implication, the settlement agreement included an implied term that the Plan would not unfairly discriminate against Dalmatia.

5

Judge Frank found that the permissive language in the settlement agreement and the Debtors' actions in proposing the first three iterations of the Plan which did not treat Dalmatia differently, as support for finding an implied term.

Next, Judge Frank addressed whether the Plan unfairly discriminated against Dalmatia. Finding that Dalmatia received significantly less compared to other unsecured creditors, combined with the fact that the Debtors could not demonstrate any specific value to Dalmatia of the other terms of the settlement agreement, the disfavored treatment of Dalmatia could not be justified. Judge Frank reviewed the two most predominant tests for determining whether discrimination in a plan is unfair: the Markell test and a four-factor test, and found that the treatment here would fail both tests.

EarthPride and Lancaster filed this appeal on August 14, 2020 (ECF 1), and the case was transferred to the undersigned on October 5, 2020 (ECF 10). EarthPride and Lancaster filed their brief on November 25, 2020 (ECF 13), and Dalmatia responded on December 28, 2020 (ECF 15).

### III. Standard of Review

"In bankruptcy cases, the district court sits as an appellate court." In re Cohn, 54 F.3d 1108, 1113 (3d Cir. 1995). Therefore, the district court "applies a clearly erroneous standard to findings of fact, conducts plenary review of conclusions of law, and must break down mixed questions of law and fact, applying the appropriate standard to each component." Meridian Bank v. Alten, 958 F.2d 1226, 1229 (3d Cir. 1992). The clear error standard is met "when, after reviewing the evidence, the appellate court is left with the definite and firm conviction that a mistake has been committed." Cohn, 54 F.3d at 1113; see also Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc., 57 F.3d 1215, 1223 (3d Cir. 1995) ("It is the responsibility of an appellate court to accept the ultimate factual determination of the fact-finder unless that

determination is either completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supporting evidentiary data.").

**IV.     Contentions on Appeal**

The parties present the following issues on appeal:

> 1. Did the Bankruptcy Court err in admitting parol evidence regarding the settlement agreement?
>
> 2. Did the Bankruptcy Court err in applying the doctrine of necessary implication to the settlement agreement?
>
> 3. Did the Bankruptcy Court err in holding that the Plan unfairly discriminates against Dalmatia?

**V.      The parol evidence rule was properly applied by the Bankruptcy Court**

In determining whether parol evidence is admissible, a court first must consider whether there is "a writing that represents the entire contract between the parties." Yocca v. Pittsburgh Steelers Sports, Inc., 578 Pa. 479, 497 (2004). "[I]f it appears to be a contract complete within itself, couched in such terms as [to] import a complete legal obligation without any uncertainty as to the object or extent of the parties' engagement, it is conclusively presumed that the writing represents the whole engagement of the parties." Id. at 497–98 (quoting Gianni v. R. Russell & Co., 281 Pa. 320, 323 (1924)). A few exceptions to the general rule that parol evidence shall be excluded exist, including "where a party avers that a term was omitted from the contract because of fraud, accident, or mistake" and "where a term in the parties' contract is ambiguous." Id. at 498.

"A contract is ambiguous if, and only if, it is reasonably or fairly susceptible of different construction; it is not ambiguous if the court can determine the meaning without any guide other

7

than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends." Gerhart v. Henry Disston & Sons, Inc., 290 F.2d 778, 784 (3d Cir. 1961). "Before it can be said that no ambiguity exists, it must be concluded that the questioned words of language are capable of one interpretation. Such a conclusion must be determined from a consideration of the entire instrument and not from a single portion thereof." Id.

The relevant sentence in the settlement agreement which Dalmatia argues is "ambiguous" for purposes of consideration of parol evidence is as follows: "Dalmatia shall have the ability to pursue its current claim in Bankruptcy Court but will support any plan not inconsistent with this agreement as long as it pays out at least 10%." Dalmatia argues that this sentence is ambiguous because "pays out at least 10%" does not describe which creditors must be paid ten percent of their claim, or on what basis they would be paid ten percent. The Debtors argue that the terms of the settlement agreement are clear, and that Dalmatia agreed to accept any plan which pays it ten percent of its claim, and that this Court need not look to any other sources to determine what Dalmatia agreed to.

Dalmatia urges this Court to find that this provision means that Dalmatia agreed to support any plan that paid <u>all unsecured creditors ten percent</u>, not a plan that only pays Dalmatia ten percent. It provides two pieces of context in support of its argument:

> First, that in a bankruptcy proceeding, stating that a plan will pay out at a certain percentage "means, generally, that the plan provides for unsecured creditors, like Dalmatia, to receive distributions totaling such percent of their claims." Second, Dalmatia points to the first four versions of the Plan, including three which were filed after the settlement agreement was approved, all of which treated Dalmatia equally to the other unsecured creditors. It argues that "[i]f the [Debtors] truly

believed that Dalmatia had agreed to support any plan so long as it paid the Dalmatia Claim at 10% value, they obviously would have proposed so beginning with their first amended plan." (emphasis in original).

The Bankruptcy Court found that the settlement agreement was not a fully integrated agreement and that the "support of the plan clause [was] vague." As to whether the contract was integrated, this Court agrees with Judge Frank that the overall circumstances of the settlement negotiations, including that both parties described the discussions as "impromptu" and that the initial agreement was handwritten, warranted admissibility of the parol evidence. This Court also agrees that "pays out 10%" is unclear as to who is receiving ten percent of their claim. As Judge Frank explained, particularly within the context of this proceeding, where it would be expected that all unsecured creditors would receive the same treatment as Dalmatia, this phrase is ambiguous.

Further, given this Court's role as an appellate court and the standard of review on appeal, Judge Frank's findings at the evidentiary hearing are binding unless they are clearly in error. Judge Frank found it relevant that Mr. Thompson was unable to provide an explanation for why the initial plans treated Dalmatia equally with the other unsecured creditors. He found the Debtors' explanation unconvincing, particularly given the expectation that all unsecured creditors would be treated similarly, barring some other justification. While there is no specific parol evidence which clearly suggests that this issue was contemplated by the parties, the context pointed to by Dalmatia and relied on by the Bankruptcy Court is sufficient to find that Dalmatia did not agree to accept any Plan which paid it ten percent, when the other unsecured creditors would receive more.

Although the Debtors cite several cases which discuss parol evidence generally, they fail to cite any case which dictates a different holding under these circumstances. Therefore, the

factual record and these legal principles support the Bankruptcy Court's decision to consider parol evidence.

## VI. The doctrine of necessary implication was properly applied by the Bankruptcy Court

"Courts employ the doctrine of necessary implication as a means of avoiding injustice by inferring contract provisions that reflect the parties' silent intent." Stamerro v. Stamerro, 889 A.2d 1251, 1259 (Pa. Super. 2005). "In the absence of an express provision, the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract." Murphy v. Duquesne Univ. of the Holy Ghost, 565 Pa. 571, 598 n.11 (2001) (quotation omitted). However, "[i]mplied duties cannot trump the express provisions in the contract." John B. Conomos, Inc. v. Sun Co., 831 A.2d 696, 706 (Pa. Super. 2003). This doctrine applies "only when it is necessary to prevent injustice and it is abundantly clear that the parties intended to be bound by such term." Kaplan v. Cablevision of Pa., Inc., 671 A.2d 716, 720 (Pa. Super. 1996).

Dalmatia argues, and the Bankruptcy Court found, that it was appropriate to infer that Dalmatia did not waive its right to be protected from unfair discrimination in the Bankruptcy Plan. The Debtors argue that the doctrine of necessary implication was inappropriately applied here because it prevents the Debtors from receiving the benefit of their bargain under the settlement agreement. The Debtors also argue that it is not "abundantly clear" that the parties' intended to be bound by such a term.

This Court agrees with Judge Frank that the doctrine of necessary implication applies here as an alternative to the parol evidence rule. If, as Judge Frank found, the contextual evidence

supports finding that the parties intended for the settlement agreement to mean that, at a minimum, all unsecured creditors would receive ten percent of their claim, then either doctrine is appropriately applied. The Debtors again fail to cite any binding legal precedent supporting their contention that Judge Frank improperly applied this doctrine.

### VII. The facts and law support Judge Frank's conclusion that Dalmatia suffered unfair discrimination

As this Court has determined that Dalmatia is not bound by the settlement agreement to accept the Plan, the next question is whether Dalmatia is unfairly discriminated against in the Plan. The provision of the Bankruptcy Code at issue here is 11 U.S.C. § 1129(b)(1) which provides, in relevant part:

> [I]f all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

(emphasis added). This type of confirmation "is also called a 'cram down,' as the court can cram a plan down over the objection of" a class of creditors. In re Armstrong World Indus., 432 F.3d 507, 512 (3d Cir. 2005). "Cramdown plans are an antidote to one or more classes of claims holding up confirmation of an otherwise consensual plan." In re Tribune Co., 972 F.3d 228, 237 (3d Cir. 2020).

"Generally speaking, [the unfair discrimination] standard ensures that a dissenting class will receive relative value equal to the value given to all other similarly situated classes." Id. at 240. "The pertinent inquiry is not whether the plan discriminates, but whether the proposed discrimination is 'unfair.'" In re Armstrong World Indus., 348 B.R. 111, 121 (D. Del. 2006); see

11

also In re Tribune Co., 972 F.3d at 242 ("you can treat differently (discriminate) but not so much as to be unfair").

The Third Circuit noted, as of August 2020, that "the unfair-discrimination standard ha[d] received little analysis." In re Tribune Co., 972 F.3d at 247.  Here, the parties dispute whether, the Third Circuit adopted the Markell test as the appropriate test to use for determining unfair discrimination in all circumstances in Tribune.  It appears that this Court's opinion is the first district court opinion to consider this question.  The Debtors argue that the Third Circuit did adopt the Markell test.  Dalmatia points to the Third Circuit's statement that it reviewed "the Bankruptcy Court's choice of legal test de novo" and "agree[d] that it was appropriate in th[o]se circumstances to take a pragmatic approach to measure the Plan's discrimination."  Id. at 242 (emphasis added). This Court agrees that the Third Circuit did not explicitly adopt the Markell test to be applied under all circumstances.

Judge Frank's opinion was filed prior to the Third Circuit's decision in In re Tribune, and therefore he applied two different but related tests for unfair discrimination: (1) the Markell test, named for the bankruptcy scholar who proposed it,[2] and (2) what he referred to as "the four-factor test."  Therefore, some review of both tests applied by Judge Frank is appropriate here.

The Markell test is as follows:

> A rebuttable presumption of unfair discrimination exists when there is
>
> (1) a dissenting class; (2) another class of the same priority; and (3) a difference in the plan's treatment of the two classes that results in either (a) a materially lower percentage recovery for the dissenting class (measured in terms of the net present value of all payments), or (b) regardless of percentage recovery, an allocation under the plan

---

[2] See Bruce A. Markell, A New Perspective on Unfair Discrimination in Chapter 11, 72 Am. Bankr. L.J. 227 (1998).

12

> of materially greater risk to the dissenting class in connection with its proposed distribution.
>
> Under this test, a presumption of unfair discrimination may be overcome if the court finds that
>
> a lower recovery for the dissenting class is consistent with the results that would obtain outside of bankruptcy, or that a greater recovery for the other class is offset by contributions from that class to the reorganization. The presumption of unfairness based on differing risks may be overcome by a showing that the risks are allocated in a manner consistent with the prebankruptcy expectations of the parties.

In re Tribune Co., at 241. The four-factor test is as follows:

> To determine whether the plan unfairly discriminates, the test considers whether: (1) a reasonable basis for discrimination exists; (2) the debtor cannot consummate its plan without discrimination; (3) the discrimination is imposed in good faith; and (4) the degree of discrimination is directly proportional to its rationale.

Id. at 240–241.

Under the four-factor test, the majority of the discussion by the parties is based on the related first and fourth factors, and whether the settlement agreement provides "a reasonable basis for discrimination." Under the Markell test, the considerations are the same, if worded differently. Finding that Dalmatia was not treated unfairly would require the Debtors to show that Dalmatia did not receive "a materially lower percentage recovery" based on the injunctions, or that, the "lower recovery . . . is consistent with the results that [Dalmatia] would obtain outside of bankruptcy" as reflected by the settlement agreement. At their core, both of these tests consider the value that Dalmatia received from settlement agreement as relevant, but require that whatever value it received must justify its inferior treatment. Therefore, as Judge Frank noted, under either test, the issue "essentially boils down to whether after accounting for the non-monetary value that Dalmatia received under the settlement agreement have the Debtors shown the degree of reduced

monetary payout afford to Dalmatia under the Plan is not unfair." For that reason, Judge Frank did "not get deeply into the weeds in applying the Markell or the four-factor test for unfair discrimination."

Given this Court's role as an appellate court, review of Judge Frank's specific factual findings on this issue is limited. To begin, Judge Frank noted that "the monetary discrimination created by the plan is not in dispute." Judge Frank converted the percentage payments into dollars and found that the Plan provided Dalmatia a total payment of $175,887.10 (ten percent of the fixed amount of its claim). If Dalmatia were treated as a Class 8 or 9 creditor, it would have received a guaranteed payment of $685,959.69, with a potential for a payment as high as $879,435,50. Judge Frank noted that such a disparity "would certainly constitute unfair discrimination in the absence of justifying circumstances." However, Judge Frank also acknowledged that Dalmatia received additional relief in the settlement agreement in the form of the injunctions and the two personal judgments against C.O. Nolt and Mr. Thompson.

With respect to the judgments against C.O. Nolt and Mr. Thompson, Judge Frank found that "Dalmatia's receipt of these judgments [did] not count towards any value that Dalmatia received that could justify the discrimination." Judge Frank found that there was "no showing that Dalmatia had any potential of collecting" on those judgments. He noted that C.O. Nolt was not in operation at the time of the settlement agreement, had no assets, and had not paid out any of its claim. Mr. Thompson also had not paid out any of the claim against him, and his assets are protected from collection.

With respect to the value of the injunctions, Judge Frank found that Dalmatia did receive some benefit from these injunctions but that there was insufficient evidence of their value. Judge Frank heard testimony from both parties expressing opposing understandings of the value of the

injunctions. Based on this evidence, Judge Frank "conclude[d] that the debtors had failed to show under Section 1129(b)(1) that the confirmed plan [did] not discriminate unfairly against Dalmatia." Judge Frank noted that this finding was based "in large part . . . on the lack of concrete evidence regarding the benefit that Dalmatia received from the injunctions." He found that "[f]rom a theoretical stand point, Mr. Thompson's testimony concerning the intended effects of the injunctions [made] some intuitive sense." Judge Frank also credited Mr. Thompson's testimony over Ms. Magee's. However, even crediting this testimony for the idea that Dalmatia received some value, Judge Frank found that "the evidence of benefits to Dalmatia due to the injunction is slim and speculative." He further found that "the degree of that benefit is almost entirely unqualified."

Judge Frank also addressed the Debtors' argument that "the total value to Dalmatia under the Settlement Agreement [was] $700,000" based on the fact that the settlement agreement allows the Debtors to pay Dalmatia $700,000 to lift the injunctions and receive an assignment of its judgment. He found this argument unconvincing because the settlement agreement did not specifically state that Dalmatia would receive ten percent from the Plan, but instead that it would receive "at least 10%." Therefore, under the settlement agreement, Dalmatia could have received more than ten percent and then, by the Debtors own calculation, the value of the injunctions would be reduced.

Lastly, Judge Frank noted the value of the injunctions is called into question by the Debtors' treatment of Dalmatia equally to the other unsecured creditors after the settlement agreement was approved.

The Debtors have not shown that Judge Frank's factual findings were unsupported by the record or that his legal conclusions were wrong. They essentially repeat the same arguments

15

presented to the Bankruptcy Court. Judge Frank found that while Dalmatia may have received some benefit from the settlement agreement, there were not sufficient facts in the record to support the conclusion that the significant disparity between Dalmatia's recovery compared to the other unsecured creditors was fair. Relying on those factual findings by Judge Frank, this Court agrees.

## VIII.  Conclusion

For the foregoing reasons, this Court will affirm the order of the Bankruptcy Court dated July 29, 2020. Pursuant to the terms of the Debtors' confirmed chapter 11 plan, Dalmatia is entitled to a distribution as a Class 8 and 9 creditor, rather than as a Class 5 creditor.

/Volumes/Judge Baylson/CIVIL 20/20-4032 Earth Pride Bankruptcy Appeal/20cv4032 Memo Re Bankruptcy Appeal.docx